**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
         bscott@bursor.com
         jwilner@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA HAWLEY and KILEY KRZYZEK, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>AIRBNB INSURANCE AGENCY LLC and GENERALI ASSICURAZIONI GENERALI S.P.A.,<br><br>            Defendants. | Case No. 3:24-cv-03142-TLT<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jessica Hawley and Kiley Krzyzek ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Airbnb Insurance Agency LLC ("Airbnb") and Generali Assicurazioni Generali S.P.A. (U.S. Branch) ("Generali") (collectively, "Defendants"). Plaintiffs bring this action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.     Plaintiffs bring this action on behalf of a class of California consumers to seek redress for Defendants' unlawful marketing and sale of travel insurance policies on various booking, travel, and entertainment websites.

2.     Pursuant to Proposition 103, insurers in California cannot charge more than a pre-approved premium rate for their policies.  Insurance premiums must be approved by the California Department of Insurance ("CDI"), and insurers and their agents may not charge mandatory fees on top of the approved premium.

3.     In violation of these laws and against the clear public policy in California, Defendants automatically bundle a so-called "assistance fee" in the single price they charge consumers for travel insurance.  The motivation behind such conduct is clear: Defendants are trying to circumvent California law and charge more than the approved premium for their insurance services.

4.     Defendants make a straightforward offer to consumers: insurance for their travel arrangements, covering expenses associated with trip cancellation, trip interruption, lost baggage, and other travel perils.  Defendants make this offer directly to consumers through various websites, including, but not limited to, airbnb.com ("Airbnb").  Although their travel insurance offers are presented for a price that appears to be the insurance premium, Defendants secretly and unfairly charge unsuspecting consumers additional fees, *on top of the calculated premium*, without disclosing the nature of those fees and without giving consumers an option to pay only the approved premium for the travel insurance according to the filed and approved rate for that insurance.  Defendants try to justify those fees by representing that the fees are for a supposed

assistance service. That service purports to allow insureds to spend time on the telephone with customer service representatives and to receive "roadside assistance."  But consumers are unaware any such service is a noninsurance service, they do not want it, they do not want to pay what Defendants charge for it, and they have no choice but to pay for it in order to obtain travel insurance.

5. Most, if not all, of the services and benefits Defendants call "non-insurance" or "assistance services" are, in fact, part of the insurance contract and are subject to the approved rate, and Defendants are not allowed to charge extra for them.

6. Even if any of the assistance services and benefits Defendants call "non-insurance" could be accurately characterized as unrelated to insurance (if they were sold separately), it would still be illegal and unfair for Defendants to automatically bundle a fee for such "non-insurance" services into the total plan price and require everyone to pay that fee to the insurance agent to get the insurance that is offered.

7. Consumers are not afforded any opportunity to decline these assistance services, or the associated charge in the offer or purchase process, nor is any information disclosed to consumers on assistance pricing distinguished from insurance pricing.

8. Defendants' practices are contrary to California's public policy of ensuring consumers get actuarially based rates for insurance, and they deprive consumers of the benefits of that regulation.  If an insurer can just add any amount it chooses on top of an approved rate, it undermines the purpose of rate regulation and the efforts of the CDI in reviewing and approving specific rates.

9. Moreover, the financial injury to consumers of being charged an additional fee, on top of the insurance premium, supposedly (but not in reality) for a service they do not use, are not aware of, and which is priced far above its actual value, outweighs any potential benefit of requiring consumers to pay such an arbitrary fee—particularly when Defendants could easily make their assistance services optional.

10. Plaintiffs bring this action on behalf of themselves and a class of similar situated individuals for legal and equitable remedies resulting from Defendants' illegal actions.

**PARTIES**

11.     Defendant Airbnb Insurance Agency LLC is a New York corporation with its principal place of business at 222 Broadway New York, New York 10038.  Airbnb sells the insurance policies offered by Defendants on Airbnb.com.  With respect to the allegations herein, Airbnb acted as the agent of Generali and in engaging in the activities alleged, was acting within the scope of its authority as such agent.

12.     Defendant Generali Assicurazioni Generali S.P.A. (U.S. Branch) "is the U.S. Representative office of Assicurazioni Generali, S.p.A. whose head office is located in Trieste, Italy."[1]  The U.S. corporation is "domiciled in the state of New York," with its principal place of business at 250 Greenwich Street, 7 World Trade Center New York, NY 10007.[2]  Generali creates, maintains, offers, markets, and sells the insurance products at issue.

13.     Plaintiff Jessica Hawley is a natural person and citizen of California, residing in Berkeley, California.

14.     Plaintiff Kiley Krzyzek is a natural person and citizen of California, residing in Venice, California.

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

16.     This Court has personal jurisdiction over Defendants because Defendants sell the travel insurance policies at issue to residents of this District, Defendants conduct substantial business in this District, the websites offering Defendants' travel insurance services allow California residents to place orders in California, and the conduct giving rise to this action arises out of and relates to that business.

---

[1] Generali, "Generali U.S. Branch—Our Underwriter," available https://www.generalitravelinsurance.com/our-underwriter.html.

[2] LinkedIn, "Generali U.S. Branch," available https://www.linkedin.com/company/generali-usa-reasurance-company.

17.     Defendants derive substantial revenue from insurance purchasers in the state of California.  Both Defendants are registered by the California Department of Insurance to sell travel insurance in California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District, and Plaintiff Hawley resides in this District.

### FACTUAL ALLEGATIONS

19.     The sale of insurance is highly regulated in California.  California requires insurers and their agents to obtain approval for insurance rates prior to offering those policies and rates to consumers, and to clearly identify the approved insurance premium to consumers.  *See* Cal. Ins. Code § 1861.01(c) ("insurance rates subject to this chapter must be approved by the commissioner prior to their use"); § 1861.05 ("No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."); *see also* Cal. Ins. Code § 381 (providing an insurance policy must specify a statement of the premium).  There are also strict requirements if an insurance producer (who may be an agent, broker, or broker-agent) wishes to charge a fee for its services.  Only brokers may charge a broker's fee, and only after required disclosures are made.  *See* Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements).  Accordingly, insurance producers must identify any fees they charge separately from the premium and in sufficient detail for consumers to understand the fees and for there to be a determination that the fees are in compliance with the insurance laws and regulations.

20.     Reasonable consumers expect that insurers and their agents will comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any separate or additional fee, whether to compensate an agent or for a non-insurance service or benefit, will also be clearly identified prior to any agreement to pay for such fee.  Reasonable consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and does not contain hidden fees added to the insurance premium.

21.     The products at issue are travel insurance policies offered by Generali on travel, booking, and entertainment websites (the "Products").  When purchasing rental reservations or similar travel accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase.  Generali contracts with certain third-party retailers who offer online bookings and travel arrangements for their specific travel services (such as Airbnb) to present consumers with an offer to purchase Defendants' insurance Products when completing their bookings.  When Generali offers an insurance product in the checkout process of one of its partners or agents (such as Airbnb), Generali's insurance offer is the only insurance option presented to consumers.

22.     Airbnb acts as Generali's agent in the sale of the Products on some of the websites where the Products are offered, including, but not limited to, on airbnb.com.

23.     Defendants are responsible for charging and collecting the premiums and fees at issue and are both responsible for ensuring that the amount charged to consumers is lawful. Defendants purport to provide a supposed "assistance service" for which they deceptively, unfairly, and unlawfully charge consumers.  These additional non-insurance services are deceptive, unfair, and unlawful to the extent they offer no additional value to the consumer.  Defendants have been unjustly enriched by those unlawful, unfair, and undisclosed fees.

24.     The checkout flow on Airbnb.com is a typical example of an offer of the Products on a third-party website.  On the Airbnb.com checkout screen, the purchaser has the option to check a box to insure the reservation for an additional fee.





1    25.    Within this offer on a third-party checkout page, as with all pages where Generali

2  offers the Products, Defendants do not identify assistance benefits, indicate that the assistance fee

3  is for separate, non-insurance services, do not identify any fee, price, or charge for any such

4  assistance service or benefit that is separate from the premium, and provide the consumer no means

5  for purchasing the offered insurance policy without paying the assistance fee.

6    26.    If consumers are to click on the "what's covered" hyperlink (which they do not need

7  to do in order to purchase the policy and check out), the services included in the policy are listed.



27.     None of the listed services are disclosed as noninsurance services and the amount charged for any noninsurance services is not listed.

28.     If consumers click the hyperlink for "Important Disclosures" (which, again, the consumer does not need to do to purchase the insurance and would likely not think to do on a page purporting to list all the insurance services already) that page discloses that the cost of Defendants' offered insurance services included a price for noninsurance assistance services, but does not disclose what those services are and how much Defendants are charging for them or give consumers the option not to purchase the additional assistance services.

29.     This document does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the calculated premium for the insurance Product.  First viewing the "Important Disclosures" requires clicking through an already separate section not required for the checkout process.  Further, there is no indication within the actual offer or "What's Covered" pop-up that the price includes a fee for non-insurance services or that the "Important Disclosures" will reveal the existence of such a fee.  Moreover, the "Important Disclosures" still does not disclose the amount of the fee and requires consumers to send an email to ask Defendants to disclose the fee.  Defendants know that, and have designed the checkout process such that, consumers are highly unlikely to discover the existence of the amount of the assistance fee or make an inquiry about it.

30.     Consumers reasonably expect some amount of service and information (about the insurance and potential claims) to be available to them when they purchase insurance.  Such policy and claims administration costs are supposed to be included in the insurance premiums.  However, to the extent Defendants offer additional assistance benefits that are truly separate from the insurance benefits and may be accurately described as non-insurance benefits, there is little demand in the market for such assistance benefits at the prices Defendants charge and in the form in which they are offered (requiring insureds to call a toll-free number to speak with customer service representatives to obtain various types of information).  This is especially true of concierge services.  Consumers who purchase airfare and hotels online and through mobile applications can readily find much of the information encompassed within Defendants' assistance services for free,

and on demand, using the Internet and widely available applications (such as from Google, Apple, Yelp, and many other service providers), or from more local or personalized sources than Defendants can offer.  Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for Defendants' non-insurance assistance service at the time they insure their travel purchases.

31.     In any event, most insureds are not aware of the availability of those services or that they have been charged for them.  Consumers generally would not pay for the separate service if given a fair and informed choice whether to do so.  On information and belief, the small percent of insureds who use the assistance services, and the relatively low costs Defendants' incur in providing such services, do not come close to justifying the price of the services and the total revenues Defendants collect for the assistance services.

32.     Moreover, there is no utility at all in requiring consumers to purchase Defendants' assistance service in conjunction with Defendants' insurance.  Under California law, and under any balancing test of fairness, Defendants must provide consumers a choice as to whether to pay for services in addition to the insurance.  If insurers and their agents can bundle any fee they want with insurance premiums, without adequately disclosing the fees to consumers and without giving them a fair and real choice whether to pay those fees, then the extensive, longstanding, and strict regulation of insurance premiums, commissions, and sales in California would become impotent.

33.     If Defendants were genuinely attempting to market an informational assistance service, they would likely offer it for free (using advertisements to cover costs) or they would charge a flat, attractive fee and highlight some competitive edge over the alternative sources of information available to consumers.  Instead Defendants hide their assistance service fee from consumers at the point of purchase.  Such practices imply that Defendants are using the assistance fees to subsidize marketing and operational costs that should properly be included in the insurance premiums, and thus that Defendants' characterization of the fees as non-insurance assistance fees is disingenuous, and an attempt to circumvent California's regulation of premiums and of agent compensation.

34.     Regardless of how Defendants' "assistance" fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee (or unauthorized premium) or as genuinely for non-insurance services (that no one has chosen and that few people would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the California Department of Insurance to charge these mandatory, hidden fees on top of the premium.  If Defendants followed the laws and regulations, they would not be charging such fees.  And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees.  Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

35.     In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with trip/travel insurance is deceptive, unfair, and unlawful.

## PLAINTIFFS' EXPERIENCE

### *Plaintiff Hawley's Experience*

36.     On or around March 30, 2024, Plaintiff Hawley completed a booking on airbnb.com.  During the checkout process, Plaintiff Hawley purchased the insurance Product offered by Defendants to protect her reservation by clicking the box to purchase travel insurance in the manner described above.

37.     Defendants designed, controlled, and have access to the exact offer text presented to Plaintiff Hawley.

38.     Defendants' insurance offer was the only insurance option presented to Plaintiff Hawley at that time.  There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance.  A single price was stated as the price of the "Travel Insurance."

39.     Unbeknownst to Plaintiff Hawley at the time she accepted the offers of insurance, the total amounts she was charged for the insurance included both an insurance premium and a mandatory fee that Defendants contend was for assistance and other non-insurance services but that

was, in effect, an unlawful agent's fee or unauthorized premium.  At a minimum, it was an unfair charge, and Defendants have no justification for bundling it with the premiums in the way they did.

40.     Neither the insurance offers nor any other portion of the checkout pages disclosed: (a) a specific breakdown of the components of the total price; (b) the specific amount Defendants categorize as the insurance premium; (c) that Plaintiff Hawely was being charged particular amounts (on top of the insurance premium), supposedly for assistance and/or "non-insurance" services and benefits; (d) that the assistance charge was not determined solely by the cost of and demand for noninsurance assistance services, but that it was a pretext to increase Defendants' profits and subsidize the marketing and sale of travel insurance; (e) that the bundling of assistance services fees with insurance premiums had not been approved and/or was not in compliance with applicable laws and regulations; (f) that she was being charged an unlawful and unfair agent's fee; (g) that she was being charged an unlawful and unfair insurance premium; and/or (h) adequate material facts about the nature of such "assistance" services.

41.     When accepting Defendants' insurance offer, Plaintiff Hawley was not aware of any non-insurance fee in addition to the premium and was not aware of the foregoing facts at the time she purchased the insurance.  As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Hawley agreed to pay Defendants to insure her purchases and believed that the amount she paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff Hawley was seeking only lawful and proper insurance—not separate non-insurance informational services.  Plaintiff Hawley would not have paid the price charged for such services by Defendants if given the choice.  She was not aware of and did not agree to pay for any additional or unlawful agent's fee or other service that Defendants purport to offer to their insureds.

42.     Plaintiff Hawley would have paid less than she did if Defendants had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including undisclosed additional fee or fees in the cost of the insurance.

43.     Plaintiff Hawley would have declined the fee or fees for Defendants' supposed "assistance" services if Defendants had fully and fairly disclosed: (a) that Defendants were

charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance" services, which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits.  Plaintiff Hawley likely would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information referenced in this Complaint.

***Plaintiff Krzyzek's Experience***

44.     On or around May 10, 2023, Plaintiff Krzyzek completed a booking on airbnb.com. During the checkout process, Plaintiff Krzyzek purchased the insurance Product offered by Defendants to protect her reservation by clicking the box to purchase travel insurance in the manner described above.

45.     Defendants designed, controlled, and have access to the exact offer text presented to Plaintiff Krzyzek.

46.     Defendants' insurance offer was the only insurance option presented to Plaintiff Krzyzek at those times.  There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance.  A single price was stated as the price of the "Travel Insurance."

47.     Unbeknownst to Plaintiff Krzyzek at the time she accepted the offers of insurance, the total amounts she was charged for the insurance included both an insurance premium and a mandatory fee that Defendants contend was for assistance and other non-insurance services but that was, in effect, an unlawful agent's fee or unauthorized premium.  At a minimum, it was an unfair charge, and Defendants have no justification for bundling it with the premiums in the way they did.

48.     Neither the insurance offers nor any other portion of the checkout pages disclosed: (a) a specific breakdown of the components of the total price; (b) the specific amount Defendants categorize as the insurance premium; (c) that Plaintiff Krzyzek was being charged particular amounts (on top of the insurance premium), supposedly for "non-insurance" services and benefits;

(d) that the assistance charge was not determined solely by the cost of and demand for noninsurance assistance services, but that it was a pretext to increase Defendants' profits and subsidize the marketing and sale of travel insurance; (e) that the bundling of assistance services fees with insurance premiums had not been approved and/or was not in compliance with applicable laws and regulations; (f) that she was being charged an unlawful and unfair agent's fee; (g) that she was being charged an unlawful and unfair insurance premium; and/or (h) adequate material facts about the nature of such "assistance" services.

49.     When accepting Defendants' insurance offer, Plaintiff Krzyzek was not aware of any non-insurance fee in addition to the premium and was not aware of the foregoing facts at the time she purchased the insurance.  As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Krzyzek agreed to pay Defendants to insure her purchases and believed, each time, that the amount she paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process.  Plaintiff Krzyzek was seeking only lawful and proper insurance—not separate non-insurance informational "assistance" services.  Plaintiff Krzyzek would not have paid the price charged for such services by Defendants if given the choice.  She was not aware of and did not agree to pay for any additional or unlawful agent's fee or any additional "assistance" or other service that Defendants purport to offer to their insureds.

50.     Plaintiff Krzyzek would have paid less than she did if Defendants had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including undisclosed additional fee or fees in the cost of the insurance.

51.     Plaintiff Krzyzek would have declined the fee or fees for Defendants' supposed "assistance" services if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance" services, which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits.  Plaintiff Krzyzek likely would not have purchased insurance

from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information referenced in this Complaint.

## <u>CLASS ALLEGATIONS</u>

52. Class Definition: Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and other similarly situated individuals defined as all California residents who purchased travel insurance from Generali during the Class period who were charged a fee for the supposed assistance services or benefits included with Generali's travel insurance contracts on top of the applicable insurance premium rate Generali was authorized to charge for their travel insurance (the "Class").

53. Plaintiffs also bring this action on behalf of a Subclass of consumers defined as all California residents who purchased travel insurance from Defendants during the Class period who were charged a fee for the supposed assistance services or benefits included with Defendants' travel insurance contracts on top of the applicable insurance premium rate Defendants were authorized to charge for their travel insurance (the "Airbnb Subclass").

54. Plaintiffs reserve the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

55. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

56. Excluded from the Class is Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

57. <u>Numerosity/Ascertainability</u>.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable.  The exact number of Class Members is

unknown to Plaintiffs at this time; however, it is estimated that there are thousands of individuals in the Class.  The identity of such membership is readily ascertainable from Defendants' records.

58.     Typicality.  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased travel insurance from Defendants and, as a result of Defendants' unlawful conduct, were charged more for that insurance than is allowed under California law.  Plaintiffs' claims are based on the same legal theories as the claims of other Class Members.

59.     Adequacy.  Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiffs are represented by attorneys with experience in the prosecution of class action litigation generally and in the field of consumer protection litigation specifically.  Plaintiffs' attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

60.     Common Questions of Law and Fact Predominate/Well Defined Community of Interest.  Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendants have acted on grounds generally applicable to the Class.  Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Class includes:

(a)     whether the prices Defendants actually charged for their Products were the approved "premiums" for Defendants' travel insurance Products under California law;

(b)     whether the prices or "premiums" Defendants actually charged for their Products exceeded the premium rates approved for those Products in California;

(c)     whether the "assistance fees" Defendants charged in selling their Products were unauthorized insurance premiums and/or unlawful agent fees;

(d)     whether reasonable consumers interpreted the price in Defendants' insurance offers as the insurance premium or price and were unaware of any additional fee for assistance and other services;

(e)     whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny, by charging unlawful and excessive agent fees

and/or premium charges, and/or by requiring all consumers to pay assistance fees without a fair option to decline such fees, thus charging consumers more than they are legally allowed to charge;

(f)     whether at least some of the "assistance services" included in the Products are part of the insurance or are insurance-related such that they are subject to the filed, approved rate for the travel insurance and Defendants cannot charge extra for them;

(g)     whether Defendants knew or should have known that reasonable consumers did not value the truly non-insurance assistance services (if any) included in the Products;

(h)     whether Defendants' conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code §17200, *et seq*.;

(i)     whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by misrepresenting in insurance offers that the prices charged were solely for the insurance premium, and by failing to disclose that the amounts charged to Plaintiffs and Class Members included mandatory assistance fees;

(j)      whether Defendants' conduct constitutes untrue or misleading statements within the meaning of California Business and Professions Code § 17500, *et seq*.;

(k)     whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

(l)      the amount of profits and revenues earned by Defendants and/or the amount of monies or other obligations lost by Class Members as a result of the misconduct alleged herein; and

(m)     whether Class Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief.

61.     <u>Superiority</u>: Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not

practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiffs know of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**COUNT I**
**Violation of California's False Advertising Law**
**Business and Professions Code § 17500, *et seq.***

62.     Plaintiffs reallege and reincorporate the preceding paragraphs as if fully set forth herein.

63.     Plaintiffs bring this count individually, on behalf of the Class against Generali, and on behalf of the Airbnb Subclass against Defendants.

64.     During the Class Period, Defendants made untrue, false, deceptive, and/or misleading statements in connection with the advertising, marketing, and sale of their Products on airbnb.com and other third party websites.

65.     Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Class and public. As described throughout this Complaint, Defendants led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed premium for the policies.

66.     Defendants knew or should have known that consumers did not demand or value the supposed "assistance" and other non-insurance services they offered, that consumers would not pay for it, and that consumers did not know Defendants were charging them for it when they purchased the Products. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and non-insurance services. Defendants knew or should have known that they misled consumers regarding: the nature of the price paid for the insurance, the existence of an additional fee for Defendants, and the extent of Defendants' assistance and other services.

67.     Defendants created a situation where they could charge for a service while hiding its existence to consumers they had charged, making it even more unlikely that insureds would use the

service for which they had been charged and making Defendants' performance of the supposed assistance and other services illusory.

68.     By their actions, Defendants disseminated uniform advertising regarding the insurance policies to and across California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public.

69.     The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive reasonable consumers.

70.     In making and disseminating these statements, Defendants knew, or should have known, their advertisements were untrue and misleading in violation of California law.  Plaintiffs and members of the Class based their purchasing decisions on Defendants' advertisements relating to the Products.  The revenue attributable to the Product sold in those false and misleading advertisements likely amounts to millions of dollars.  Plaintiffs and members of the Class were injured in fact and lost money and property as a result.

71.     The misrepresentations and non-disclosures by Defendants and the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et. seq.*

72.     As a result of Defendants' wrongful conduct, Plaintiffs and members of the Classes lost money in an amount to be proven at trial.  Plaintiffs and the Classes are therefore entitled to restitution as appropriate for this cause of action.

73.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code Civ. Proc. § 1021.5; injunctive relief, and other appropriate equitable relief.

**COUNT II**
**Violation of California's Unfair Competition Law**
**Business and Professions Code § 17200, *et seq.***

74.     Plaintiffs reallege and reincorporate the preceding paragraphs as if fully set forth herein.

75.     Plaintiffs bring this count individually, on behalf of the Class against Generali, and on behalf of the Airbnb Subclass against Defendants.

76.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act of practice."  For the reasons discussed above, Defendants have engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

77.     Throughout the Class Period, Defendants have engaged in, and continue to engage in **Unlawful Business Practices** by violating (i) the FAL, California Business and Professions Code § 17500 *et seq.*, as described above, and (ii) the California Insurance Code and regulations, including but not limited to Cal. Ins. Code § 332 (requiring disclosure of all facts material to the insurance contract), Cal. Ins. Code § 381(f) (requiring Defendants' Products to include a "statement of the premium"), Cal. Ins. Code § 790.02 (prohibiting unfair and deceptive practices in the business of insurance), Cal. Ins. Code §§ 1861.01(c) and 1861.05 and associated regulations and case law (insurance rates must be approved by the CDI prior to their use); and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 and applicable case law (prohibiting appointed agents from charging fees). To the extent Defendants charge consumers for a non-insurance service without properly disclosing that practice, Defendants violate the FAL and Cal. Ins. Code § 332 because they fail to disclose material facts regarding the price of the insurance and mislead consumers as a result.  To the extent the supposed "assistance" and other fees for purportedly non-insurance services are in fact mandatory agent fees (or additional premium) and are determined by factors similar to those typically used to determine agent fees and premiums, then Defendants violate Cal. Ins. Code §§ 1861.01(c) and 1861.05 (because they did not get the required prior approval for those fees) and/or Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements).

78.     Defendants have engaged, and continue to engage, in **Unfair Business Practices** through the practices described herein, which undermine and offend the public policies behind Proposition 103, including: to protect consumers from arbitrary insurance rates and practices and to ensure that insurance is fair, available, and affordable for all Californians.  Moreover, the financial

injury to consumers of being required to pay an additional fee, on top of the insurance premium, supposedly (but not in reality) for a service they do not use, are not aware of, and which is priced far above its actual value, outweighs any potential benefit of requiring consumers to pay such an arbitrary fee on top of a highly regulated insurance price—particularly when Defendants could easily make their assistance services optional.

79.    Defendants have engaged, and continue to engage, in **Fraudulent Business Practices** by failing to disclose that the amounts charged to Plaintiffs and Class members for the Products included mandatory assistance fees and (if Defendants' characterization of the fees as "non-insurance" were correct) misleading consumers to believe that the prices charged for the Products were solely for the insurance premium, when they also included a hidden fee for a noninsurance service.

80.    Defendants caused injury to Plaintiffs and Class Members.  Had Defendants not violated California law and/or public policy as described herein, they would have charged only the authorized insurance premiums for the Products and Plaintiffs and those similarly situated would not have paid the "assistance fees" charged by Defendants.  If Plaintiffs had been adequately informed and not deceived by Defendants, they would have declined to purchase Defendants' Products or paid less for them.

81.    Defendants' acts and omissions are likely to deceive reasonable consumers.

82.    The gravity of the consequences of Defendants' conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Class.

83.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class seek an order of this Court that includes, but is not limited to, requiring Defendants to (a) provide restitution to Plaintiffs and other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs' attorneys fees and costs.

## PRAYER FOR RELIEF

84.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

      (a)    For an order certifying the Class and Subclass under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Class and Subclass, and Plaintiffs' attorneys as Class counsel;

      (b)    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

      (c)    For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

      (d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

      (e)    For prejudgment interest on all amounts awarded;

      (f)    For an order of restitution and all other forms of equitable monetary relief;

      (g)    For injunctive relief as pleaded or as the Court may deem proper;
For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  July 1, 2024

**BURSOR & FISHER, P.A**.

By: _____*/s/ Brittany S. Scott*_____
      Brittany S. Scott

Neal J. Deckant (State Bar No. 322946)
Brittany S. Scott (State Bar No. 327132)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:   (925) 407-2700
Email: ndeckant@bursor.com
      bscott@bursor.com
      jwilner@bursor.com

*Attorneys for Plaintiffs*